# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN GOREE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 22-cv-1738 Hon. Martha M. Pacold |
| NEW ALBERTSONS L.P., | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS,
OR IN THE ALTERNATIVE, STAY ALL PROCEEDINGS**

Defendant New Albertsons L.P. (incorrectly named as New Albertson's Inc. d/b/a Jewel Osco) ("Albertsons") respectfully moves this Court to compel arbitration and dismiss Plaintiff's claims in this matter, or in the alternative, stay these proceedings as required by the Capstone Logistics, LLC ("Capstone") Employment-At-Will and Arbitration Agreement and pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq*. In support of its Motion, Albertsons states as follows:

## I. INTRODUCTION

Plaintiff Bryan Goree ("Plaintiff") was employed by Capstone, a third-party staffing agency, on an at-will basis from 2017 through 2020. During his tenure with Capstone, Plaintiff worked in one of Albertsons' distribution centers in Illinois, which contracted with Capstone to provide personnel staffing. At the outset of his employment in 2017, and again in February 2019 after its terms were updated, Plaintiff and Capstone entered into arbitration agreements. Pursuant to the 2019 agreement, Plaintiff agreed to arbitrate on an individual basis all claims pertaining to his employment with Capstone, as well as all claims he may have against Capstone's business

partners and customers. Nonetheless, Plaintiff filed this action against Albertsons in state court, alleging that Albertsons violated the Illinois Biometric Information Protection Act, 740 ILCS 14/1, *et seq.* ("BIPA"), while Plaintiff worked as a Capstone employee in an Albertsons warehouse. Because Plaintiff's claim pertains to both his employment at Capstone and is brought against intended third-party beneficiary Albertsons, the 2019 arbitration agreement governs this action, requiring him to resolve the claim in a binding individual arbitration proceeding. As an intended third-party beneficiary of the 2019 arbitration agreement, Albertsons is entitled to enforce the terms of the agreement despite not being a signatory. The Court should thus compel arbitration of Plaintiff's BIPA claim on an individual basis under the terms of the 2019 arbitration agreement. It should also dismiss this action and stay all further proceedings in this case.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Employment

Plaintiff alleges that he worked as a warehouse worker at one of Albertsons' distribution centers in Melrose Park, Illinois, a job he obtained through a third-party staffing agency. Compl. ¶¶ 2, 44.[1] Plaintiff was employed by Capstone from approximately April 25, 2017 through May 23, 2020. Declaration of Scott Dickinson ("Dickinson Decl.") ¶ 4.

### B.    Plaintiff's Agreement to Arbitrate

Plaintiff initially entered into an arbitration agreement with Capstone on April 25, 2017, when he signed Capstone's 2017 Employment-At-Will And Arbitration Agreement (the "2017 Arbitration Agreement"). *Id.* ¶¶ 13, 16, Ex. 2. In early 2019, Capstone updated its arbitration program, which included a new version of its Employment-At-Will And Arbitration Agreement

---

[1] Plaintiff did not reference the agency by name in the complaint, but the entity he was referring to is Capstone.

(the "Arbitration Agreement") and Associate Handbook. *Id*. ¶ 21. Coinciding with that update, Capstone began providing notice to existing employees of the updated arbitration program. *Id*. ¶ 22. Plaintiff, a current employee at the time, was provided with both the Arbitration Agreement and the 2019 Associate Handbook. *Id*. ¶ 32. On February 21, 2019, Plaintiff executed the Arbitration Agreement with Capstone. *Id.* ¶¶ 20-21, 33, 36. Specifically, Plaintiff executed the 2019 Arbitration Agreement by clicking an electronic acknowledgement box within Capstone's online human resources portal, in which he had opened and reviewed the agreement. *Id*. ¶¶ 27, 36.

Capstone's policy is that employees should carefully read each policy, form, or agreement before signing it, and Capstone provides them with ample time to do so. *Id.* ¶ 28. There is no time limit for individuals to review and either reject or accept the forms, policies or agreements. *Id*.

The electronic acknowledgement Plaintiff clicked after reviewing the Arbitration Agreement in Capstone's human resources portal put him on notice that "By clicking Acknowledge Policy, I acknowledge that this serves as the electronic representation of my signature, including legally binding contracts—just as wet ink pen on a paper signature would." *Id*. ¶ 27. After reading this notice, Plaintiff proceeded to click "Acknowledge Policy." *Id*., ¶ 27. Plaintiff also continued his employment with Capstone following the execution of both the 2017 and 2019 Arbitration Agreement, thereby "agreeing to [the] Agreement." *Id.*

The Arbitration Agreement provides:

> Both I and the Company agree to use binding arbitration, instead of going to court, as the sole and exclusive means to resolve any "Covered Claims" that arise or have arisen between me and the Company. I understand and agree that arbitration is the only forum for resolving Covered Claims and that both I and the Company are waiving and relinquishing our respective rights to trial before a judge or jury in federal or state court in favor of arbitration.

*Id*., ¶ 33, Ex. 5 at §2.

3

The Arbitration Agreement defines "Covered Claims" to include, but are not be limited to, "any claim, dispute, and/or controversy that may arise out of or be related in any way to my employment." *Id.* at § 3. It further provides that "Covered Claims also specifically include but are not limited to any claim, dispute, and/or controversy that I may have against… the Company's business partners or customers and their employees." *Id.*

The Arbitration Agreement further mandates that Covered Claims be resolved in arbitration strictly on an individual basis:

> I and the Company agree that Covered Claims will be arbitrated only on an individual basis. All claims subject to this Agreement shall be brought in the individual capacity of myself or the Company.… This Agreement shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees or parties, or permit such claims or controversies to proceed as a class or collective action. No arbitrator shall have the authority under this Agreement to order any class or collective action.

*Id.* at § 5.

The Arbitration Agreement states that the "employment dispute resolution rules of the American Arbitration Association" will apply to all Covered Claims, and that arbitrators will be selected in accordance with the same rules. *Id.* at §§ 7-8.

Plaintiff also agreed that the Arbitration Agreement "is a condition of my employment with the Company. By commencing and/or continuing employment with the Company, I am agreeing to this Agreement. I acknowledge that I have carefully read this Agreement, that I understand its terms, and that I have entered into this Agreement voluntarily.…" *Id.* at § 13.

The Arbitration Agreement further provides that "arbitration is intended to be a last resort," and that an employee and the Company will "rais[e] concerns with each other, to attempt to resolve any concerns informally before filing for arbitration." *Id.* §6.

Finally, the Arbitration Agreement provides that "it is made pursuant to and shall be governed under the Federal Arbitration Act." *Id.* at § 14.

### C. Plaintiff's Claim Against Albertsons

Instead of filing an individual claim in arbitration as required by the Arbitration Agreement, Plaintiff filed a class-action complaint against Albertsons in the Circuit Court of Cook County, Illinois alleging BIPA violations. Specifically, Plaintiff alleges that Albertsons required Plaintiff to use Vocollect technology as part of his employment which created "voiceprints, voice patterns or templates" in violation of BIPA's notice, consent, and data storage requirements. Dkt. 1. Ex. 2, ¶¶5, 21, 35, 45, 58-59. Albertsons subsequently removed the action to this Court. Dkt. 1.

## III. ARGUMENT

### A. The Court Should Compel Individual Arbitration of Plaintiff's Claim

Plaintiff entered into an agreement to arbitrate disputes relating to Albertsons, a Capstone customer. As noted above, the FAA governs the Arbitration Agreement executed by Plaintiff and Capstone, and it "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019). The Court should thus enforce the Arbitration Agreement by compelling arbitration of Plaintiff's claim.

#### 1. The Arbitration Agreement Is Governed by the FAA

The FAA "governs the enforcement, validity, and interpretation of arbitration clauses," *Jain v. De Mere*, 51 F.3d 686, 688 (7th Cir. 1995), and reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 346 (2011). The FAA provides that "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute reflects Congressional intent that courts "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). In order to compel arbitration pursuant to an FAA-governed agreement to arbitrate, a party must show: "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006).

By its plain terms, the Arbitration Agreement is governed by the FAA. The agreement unambiguously states that "it is made pursuant to and shall be governed under the Federal Arbitration Act." Dickinson Decl. ¶ 33, Ex. 5 at § 14. Moreover, the FAA also applies where, as here, the parties are citizens of different states. *G3 Analytics, LLC v. Hughes Socol Piers Resnick & Dym Ltd.,* 2016 IL App (1st) 160369, ¶ 17, 67 N.E.3d 940, 945 (Ill. App. Ct. 2016) (finding the FAA applied to a fee agreement contemplating litigation in multiple jurisdictions between parties from different states); Compl. ¶ 23; Dkt. 1-4 ¶ 6. Accordingly, the FAA applies to the Arbitration Agreement.

### 2. The Arbitration Agreement Is Valid and Should Be Enforced

"Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: [1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Edmundson v. Amazon.com, Inc.*, No. 19 C 5835, 2020 WL 5819870, at *1 (N.D. Ill. Sept. 30, 2020), *appeal dismissed*, No. 20-3135, 2021 WL 1784414 (7th Cir. Mar. 23, 2021). All three requirements are met here. Plaintiff entered into the Arbitration Agreement in 2019, which provided that any disputes related to Capstone or its customers must be brought in arbitration on an individual basis. Despite this agreement, Plaintiff filed this lawsuit and refused to arbitrate.

### a. The Parties Executed A Valid Written Agreement To Arbitrate

The Arbitration Agreement is a valid, enforceable written agreement to arbitrate. In identifying enforceable arbitration agreements, courts look to state contract law principles and resolve any ambiguities in favor of arbitration. *McIntyre v. Household Bank*, 216 F. Supp.2d 719, 722 (N.D. Ill. 2002) ("In determining whether a contract exists, courts should employ state law principles of contract interpretation, resolving ambiguities in favor of arbitration.").

The electronic acknowledgement Plaintiff clicked after reviewing the Arbitration Agreement in Capstone's human resources portal put him on notice that "By clicking Acknowledge Policy, I acknowledge that this serves as the electronic representation of my signature, including legally binding contracts—just as wet ink pen on a paper signature would." Dickinson Decl., ¶¶ 27, 33, 36. After reading this notice, Plaintiff proceeded to click "Acknowledge Policy." *Id*. Plaintiff also continued his employment with Capstone following the execution of the Arbitration Agreement, thereby "agreeing to [the] Agreement." *Id*., ¶ 33, Ex. 5 at §13.

The Arbitration Agreement is also supported by adequate consideration, namely Capstone's continued employment of Plaintiff and Capstone's reciprocal promise to submit to arbitration any claims it may have against Plaintiff. Both of these benefits independently constitute sufficient consideration to render the Arbitration Agreement enforceable under Illinois law. *See Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 152 (2006) (holding that "under Illinois law, continued employment is sufficient consideration for the enforcement of employment agreements"); *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 712 (7th Cir. 2019) (finding that continued employment constitutes consideration for arbitration agreement); *Cantrell v. Fidelitone, Inc.*, No. 15 C 10696, 2016 WL 1161325, at *4 (N.D. Ill. Mar. 24, 2016) (employer's

promise to proceed with binding arbitration of employment-related claims is sufficient under Illinois law to constitute consideration); *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 869 (7th Cir. 1985) ("If the agreement of one party to arbitrate disputes is fully supported by the other party's agreement to do likewise, there is no need to look elsewhere in the contract for consideration….").

Agreements to arbitrate are subject to invalidation only on grounds applicable to contracts generally, such as duress, fraud, or unconscionability. 9 U.S.C. §2; *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (holding that state law can invalidate arbitration agreements only if that law "govern[s] issues concerning the validity, revocability, and enforceability of contracts generally."). There can be no legitimate claim of fraud or duress in this case—Plaintiff willingly and voluntarily entered into the Arbitration Agreement with Capstone. And because the Arbitration Agreement was easy to read, understand, and in no way hidden or mischaracterized by Capstone, it is not procedurally unconscionable. *See Keefe v. Allied Home Mortgage Corp.*, 393 Ill. App. 3d 226, 232, 912 N.E.2d 310, 316 (5th Dist. 2009) (holding that an arbitration provision's prominent title and conspicuous explanatory language precluded a finding of procedural unconscionability). Nor is the arbitration agreement substantively unconscionable, as both Capstone and Plaintiff agreed to submit any and all Covered Claims to arbitration. *See Zobrist v. Verizon Wireless*, 354 Ill. App. 3d 1139, 1149, 822 N.E.2d 531, 542 (5th Dist. 2004) (holding that an arbitration agreement was not substantively unconscionable because it contained a "mutual promise to arbitrate").

The "class and collective claim" waiver contained in the Arbitration Agreement is also valid and enforceable under well-established FAA jurisprudence. In *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011), the Supreme Court held that state laws purporting to invalidate class action waivers contained in arbitration agreements are preempted by the FAA. The Court

reasoned that such laws "interfere with arbitration" by allowing parties to "demand [class-wide arbitration] *ex* post". *Id.* at 346. More recently, the Supreme Court has clarified that class-wide arbitration is permissible only where there is an "affirmative contractual basis concluding that the parties agreed to class arbitration." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418–19 (2019) (internal quotations omitted). In this case, the Arbitration Agreement specifically precludes arbitration class and collective claims. Dickinson Decl. ¶ 33, Ex. 5 at § 5.

### 3. Plaintiff's Claim Is Within The Scope Of The Agreement To Arbitrate

Plaintiff's BIPA claim falls squarely within the scope of the 2019 Arbitration Agreement, which covers "any claim, dispute, and/or controversy that may arise out of or be related in any way to my employment." Dickinson Decl. ¶ 33, Ex. 5 at § 3. It further provides that "Covered Claims also specifically include but are not limited to any claim, dispute, and/or controversy that I may have against… the Company's business partners or customers and their employees." *Id*. The Seventh Circuit specifically noted that "[i]t would be hard to draft a broader [arbitration] clause" than one that required arbitration of "any claim or dispute." *Carbajal v. H & R Block Tax Services, Inc.,* 372 F.3d 903, 904-905 (7th Cir. 2004) (alteration in original). Further, broad language such as "any dispute, claim, or controversy that may arise" can even apply retroactively. *Freund v. UBS Fin. Servs., Inc.*, 141 F. Supp. 3d 797, 806–07 (N.D. Ill. 2015) ("[t]he relevant inquiry is not when the tort was committed, but rather whether the arbitration clause covers the particular claims asserted.") (internal quotation omitted); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639 (7th Cir. 1993) (holding that a broad definition of arbitrable "evince[d] an intent to commit to arbitration any dispute connected with the contract irrespective of when it occurs"); *In re Oil Spill by the "Amoco Cadiz" etc.*, 659 F.2d 789, 795 (7th Cir. 1981) (holding that tort

claims were arbitrable "whether the torts are alleged to have been committed… before or after the execution of the [relevant arbitration provision]").

In addition, the arbitration agreements' "arising out of or relating to" language creates a "presumption of arbitrability" for claims arising out of Plaintiff's employment. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999). When arbitration agreements are "broad in scope," only an express provision excluding a particular claim from arbitration or "the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Local 232, Allied Indus. Workers of Am., AFL-CIO v. Briggs & Stratton Corp.,* 837 F.2d 782, 786 (7th Cir. 1988). Moreover, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Here, Plaintiff's claims are within the broad definition of "Covered Claims" contained in the Arbitration Agreement for two reasons. First, Plaintiff's claim clearly relates to his employment with Capstone, through which he was placed at an Albertsons distribution center. The basis of Plaintiff's claims is that Albertsons required him to use Vocollect technology as part of his employment, and that requirement violated BIPA because the technology collected his biometric voiceprint without consent. Second, Plaintiff's BIPA claim is clearly a "claim, dispute, and/or controversy" that he has against Albertsons, a customer of Capstone. Thus, Plaintiff's claim is indisputably covered by the Arbitration Agreement.

The Arbitration Agreement also specifically enumerates the types of disputes between Plaintiff and Capstone that are "Excluded Claims" *not* subject to arbitration. *Id.* § 4. These claims are limited to "claims for medical and disability benefits, claims for workers' compensation, claims for unemployment benefits, claims asking for emergency or temporary injunctive relief… or other claims that are not subject to arbitration under current law." *Id.* None apply here, where Plaintiff

alleges violations of BIPA that occurred as part of his employment. Similarly, there is no cause to override the applicability of the Arbitration Agreement to Plaintiff's claim. And there is no other "forceful evidence of a purpose to exclude the claim from arbitration" under these circumstances. *See Local 232, Allied Indus. Workers of Am.,* 837 F.2d at 786.

In any event, the AAA employment dispute resolution rules that the Arbitration Agreement incorporates by reference leave the question of arbitrability to the arbitrator, so whether Plaintiff's claim is arbitrable is a question for the arbitrator. Dickinson Decl. ¶ 33, Ex. 5 at 7, §6.a; *see Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.,* 553 F. Supp. 3d 452, 459 (N.D. Ill. 2021) (leaving questions of arbitrability to the arbitrator where a bank deposit account agreement incorporated JAMS and AAA rules by reference). Plaintiff's dispute with Albertsons must therefore be resolved in accordance with the terms of the Arbitration Agreement.

### 4. Plaintiff Has Refused To Arbitrate

The Arbitration Agreement provides that "arbitration is intended to be a last resort," and that an employee and the Company will "rais[e] concerns with each other, to attempt to resolve any concerns informally before filing for arbitration." Dickinson Decl. ¶ 33, Ex. 5 at §6. Plaintiff did not do so here. Instead, he filed a class action with the Circuit Court of Cook County rather than first attempting to resolve the dispute informally and then, if unsuccessful, filing an individual arbitration demand as required by the Arbitration Agreement. Plaintiff has thus refused to arbitrate. *See e.g. Karl Schmidt Unisia, Inc. v. International Union, United Automobile, Aero., & Agricultural Implement Workers of America, UAW Local 2357*, 628 F.3d 909, 912 (7th Cir. 2010) (characterizing the choice to file suit as a refusal to arbitrate). Further, Plaintiff's counsel previously informed Albertsons counsel that Plaintiff would not agree to arbitration.

## IV. Albertsons Can Enforce the Arbitration Agreement Entered into between Plaintiff and Capstone

Non-signatory Albertsons may enforce the Arbitration Agreement against Plaintiff because it is an intended third-party beneficiary of the agreement. Under Illinois law, an "intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract." *Cont. Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 734 (7th Cir. 2005). It is not necessary that a contract identify an intended beneficiary by name, "but it must be identified in some manner, for example, by describing the class to which it belongs." *Id*. at 735.

The Arbitration Agreement identifies a class of intended beneficiaries to which Albertsons belongs, namely that of Capstone's "customers." The agreement reads: "Covered Claims also specifically include but are not limited to any claim, dispute, and/or controversy that I may have against, or that may be related in any way to the services I or the Company provides to, the Company's business partners or customers and their employees." Dickinson Decl. ¶ 33, Ex. 5 at §3. Because Albertsons is a customer of Capstone, Albertsons is an intended beneficiary named on a class-wide basis in the Arbitration Agreement.

This Court has found that a staffing agency's non-signatory customer was an intended beneficiary to an arbitration provision on very similar facts. In *Brown v. Worldpac, Inc.*, 17 CV 6396, 2018 WL 656082, at *2 (N.D. Ill. Feb. 1, 2018), plaintiff-employees resisted arbitration on the theory that they had only entered into arbitration agreements with a staffing company, rather than with the defendant-employer. *Id.* at *1. Defendant asserted intended beneficiary status on the grounds that the arbitration agreement expressly applied to disputes arising out of the relationship between the plaintiffs and the staffing agency "or its customers." *Id.* at *2. The court determined that the defendant qualified as an intended beneficiary and could therefore enforce the arbitration

agreement. *Id.* at *3; *see also Ziegler v. Whale Sec. Co., L.P.*, 786 F. Supp. 739, 743 (N.D. Ind. 1992) (holding that defendant broker-dealers could enforce an arbitration provision binding plaintiff and any "other broker-dealer").

All required elements for a motion to compel arbitration governed by the FAA are satisfied, and the Arbitration Agreement executed by Plaintiff is valid and enforceable. Indeed, this Court has recently granted a motion to compel arbitration in a BIPA case under the exact same Capstone arbitration agreement as the one at issue in this case. *See Nunez v. Capstone Logistics, LLC*, No. 22-cv-1185 (Dk.t 22) (N.D. Ill July 11, 2022); *compare Nunez v. Capstone Logistics, LLC*, No. 22-cv-1185 (Dk.t 13-3) *with* Dickinson Decl. Ex. 5. Thus, this Court should grant Albertsons' motion to compel arbitration.

## V. The Court Should Dismiss This Action, or in the Alternative, Stay All Proceedings.

Because Plaintiff's claim is subject to individual arbitration, his class claims should be dismissed in favor of arbitration, and this litigation should be stayed pending resolution of the arbitration. Where all of the claims in a given suit are subject to arbitration, dismissal is the proper remedy. *See, e.g., Johnson v. Orkin,* LLC, 928 F. Supp.2d 989, 1008 (N.D. Ill. 2013), *aff'd*, 556 F. App'x 543 (7th Cir. 2014) ("A court should dismiss a case when all the issues before it are arbitrable."); *see also Baumann v. Finish Line, Inc.*, 421 F. App'x 632, 636 (7th Cir. 2011) (affirming dismissal of case where plaintiff had agreed to "resolve all claims related to her employment in arbitration"); *see also Soucy v. Cap. Mgmt. Servs., L.P.*, No. 14 C 5935, 2015 WL 404632, *4, 6 (N.D. Ill. Jan. 29, 2015) ("[T]here is a growing trend among district courts to dismiss a case when all of the claims alleged therein are subject to arbitration."). Dismissal is appropriate in such cases because "when all of the claims are subject to a valid and enforceable arbitration

13

agreement, retaining jurisdiction and staying the case serves little purpose and is a waste of judicial resources." *Soucy*, 2015 WL 404632, at *6.

Here, all of Plaintiff's claim is subject to arbitration. In his complaint, Plaintiff alleges violations of BIPA as the sole count against Albertsons; the complaint includes no Excluded Claim as that term is defined in the Arbitration Agreement. Dkt. #1. Ex. 2, ¶¶57-68. Thus, there is no reason for this Court to retain jurisdiction and the Court should thus dismiss this action.

In the alternative, this Court may stay all proceedings pending the resolution of the arbitration between the parties. Such a stay is appropriate in the interest of preserving judicial resources where there is an enforceable arbitration agreement. *See Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*, No. 04 C 1190, 2007 WL 951943, at *7 (N.D. Ill. Mar. 27, 2007) (granting motion to compel arbitration and staying proceedings); *Manor v. Copart Inc.*, No. 17-CV-2585, 2017 WL 4785924, at *4 (N.D. Ill. Oct. 24, 2017) (granting motion to compel arbitration in favor of third-party beneficiary and staying proceedings pending resolution of arbitration).

**VI. CONCLUSION**

For the foregoing reasons, Defendant New Albertsons L.P. respectfully requests that the Court compel Plaintiff Bryan Goree to arbitrate his claim on an individual basis under the terms of the Arbitration Agreement and dismiss this action, or in the alternative, stay proceedings pending the outcome of arbitration, and grant any further relief the Court deems proper.

Dated: November 22, 2022

Respectfully submitted,
NEW ALBERTSONS L.P.
Defendant

By:    /s/ William F. Farley
        One of Its Attorneys

William F. Farley (ARDC # 6305896)
Rachel C. Agius (ARDC # 6322386)
Holland & Knight LLP

150 North Riverside Plaza, Suite 2700
Chicago, Illinois 60606
312-263-3600
William.Farley@hklaw.com
Rachel.Agius@hklaw.com