IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRYAN GOREE, individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> NEW ALBERTSON'S INC. dba JEWEL OSCO, <br><br> *Defendant*, | Case No.: 1:22-cv-01738 |

**PLAINTIFF'S COMBINED MOTION AND MEMORANDUM OF LAW
IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

David Fish
Mara Baltabols
Fish Potter Bolaños LLC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*dfish@fishlawfirm.com*
*mara@fishlawfirm.com*
*Attorneys for Plaintiff and
Others Similarly Situated*

## I. Introduction

Plaintiff Bryan Goree ("Plaintiff") brought this class action lawsuit claiming that Defendant New Albertsons L.P. ("Defendant") violated the Illinois Biometric Information Privacy Act ("BIPA") through use of a voice technology System. The Parties reached a $1,076,075 class settlement for the 1,001 Settlement Class Members—a gross allocation of approximately $1,075.00 per person. This is a strong result for the Class as a whole and is structured to maximize the number of individuals who will receive a settlement payment: each Class Member will automatically be sent a payment unless they opt out there is no requirement that they submit a claim form to receive a pro rata cash payment.

As such, the Court should grant preliminary approval, set a Final Approval Hearing date, and allow the Parties to send out notice to see if any Class Members object to the Settlement.

## II. Background

On January 24, 2022, Plaintiff filed a Class Action Complaint in the Circuit Court of Cook County, Illinois, alleging that Defendant violated BIPA through use of a voice technology System. (Dkt. No. 1). In particular, Plaintiff alleged that Defendant violated BIPA by failing to do four things:

1) Properly inform Plaintiff and Class Members in writing that their biometric information and/or identifiers were being collected;

2) Properly inform Plaintiff and Class members in writing of the specific purpose and length of time for which their biometric identifiers (in the form of their voiceprints) or biometric information was being collected, stored, and used, as required by BIPA;

3) Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's biometric identifiers (in the form of their voiceprints) or biometric information, as required by BIPA; nor

4) Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their biometric identifiers (in the form of their voiceprints) or biometric information, as required by BIPA.

On April 5, 2022, Defendant removed the Litigation from state court to the United States District Court for the Northern District of Illinois. Dkt. No. 7. On November 22, 2022, the Defendant filed a Motion to Compel Arbitration, Dismiss Claims, or in the Alterative to Stay Proceedings (Dkt. No. 22) which the Court denied on March 8, 2023. (Dkt. No. 30) On June 7, 2023, the Parties informed the Court that they had reached a class-wide settlement. Dkt. No. 42.

Unlike the typical biometric case in the employer context that involves the use of fingerprints for timekeeping, this case involved warehouse workers utilizing a headset like the one pictured to the right. While the Defendant disagreed, Plaintiff alleged that the technology at issue utilized a "voiceprint", which is protected under the Biometric Information Privacy Act.

### III.     Summary of Settlement Terms (Ex. 1, Settlement Agreement)

#### A.     The Proposed Settlement Class (Ex. 1, Settlement Agreement, ¶¶ 1.27, 1.25)

The proposed Settlement Class includes a total of 1,001 identified individuals who worked for Defendant in the State of Illinois who enrolled in the Vocollect System. The Class Representative seeks preliminary approval of a Settlement Class consisting of the following:

> All individuals who used the Vocollect voice technology at the Released Parties' distribution center in Illinois between March 1, 2018 and October 17, 2022. Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this action and members of their families, (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, (3) individuals that worked at a Released Parties' distribution center in Illinois who were members of a labor union; (4) persons who properly execute and file a timely request for exclusion from the Settlement Class, and (5) the legal representatives, successors or assigns of any such excluded persons.

#### B.     Settlement Fund; Allocation of the Fund; Payments to Class Members (Ex. 1, Settlement Agreement, ¶ 1.27)

While denying all liability and wrongdoing, Defendant has agreed to pay a Gross Settlement Fund of $1,076,075 ($1,075.00 per person based upon an estimated total Class Size of

1,001) to resolve the claims in this case on a class action basis. The Settlement Fund shall be used to pay (1) all payments to Settlement Class members, (2) notice and administration costs, (3) an incentive award of no more than $7,500.00 to the Plaintiff to be decided by the Court, and (4) reasonable attorneys' fees and costs to be decided by the Court. The Settlement Fund is the maximum amount Defendant shall be obligated to pay under the Settlement.

Unless they exclude themselves, Settlement Class Members will be paid pro rata via direct checks from the Settlement Fund. Because Class Members are not required to submit a claim to receive payment, the process is streamlined to ensure that all Class Members are able to participate. Ex. 1, ¶ 2.1.

    **C.**    *Cy Pres* **Recipient**
           (Ex. 1, Settlement Agreement, ¶2)

Under the terms of the Settlement, Class members will have 180 days to cash or process their settlement payments. To the extent that a check or electronic payment issued to a Settlement Class Member is not cashed or processed within 180 days after the date of issuance, those funds will be re-distributed to Settlement Class members who cashed their checks or successfully received their electronic payments, if feasible and in the interests of the Settlement Class. If re-distribution is not feasible or if residual funds remain after re-distribution, such funds will be paid to the Albertsons Companies Foundation (http://national.albertsonscompaniesfoundation.org/) or such other *cy pres* selected by the Court at the Final Approval Hearing.

    **D.**    **Release of Claims (Ex. 1, Settlement Agreement, ¶ 3)**

Class Members who do not exclude themselves will be subject to a release, as defined in the Settlement Agreement, from all claims relating to Plaintiff's or the Class Members' biometric information while employed at Defendant, including by way of example, any claims arising out of or relating to Defendant's storage, collection, capture, purchase, sale, disclosure, or other handling

of biometric identifiers or biometric information.

**E.      Notice of Class Action Settlement (Ex. 1, Settlement Agreement, ¶ 4)**

Among other things, the proposed Notice of Class Action Settlement ("Notice") explains the following to Settlement Class Members: (1) what the Settlement is about; (2) how the payment is made, exclusion, or how to submit an objection; (3) how to obtain more information about the Settlement; (4) the monetary terms of the Settlement and how individual payments will be calculated; (5) the maximum amounts to be requested for attorney fees, costs, settlement administration, and Service Award; and (6) the Final Approval Hearing details.

**F.      Distribution of Notice (Ex. 1, Settlement Agreement, ¶ 4.1(b)**

The Settlement Administrator will establish a settlement website in addition to providing Notice by direct mail. The notice and the website will contain a toll-free number that Settlement Class Members can call with questions about the Settlement or their eligibility to receive a monetary payment.

**G.      Incentive Award (Ex. 1, Settlement Agreement, ¶ 8.3)**

Under the Settlement Agreement, Class Counsel may request that the Court award the Class Representative up to $7,500 as an Incentive Award for his work in prosecuting this lawsuit on behalf of the Settlement Class, providing detailed information to support the allegations, and recovering money for the Settlement Class. Class Counsel will file the request for the Service Award with their motion for attorney fees and costs, described below.

**H.      Attorneys' Fees and Litigation Costs (Ex. 1, Settlement Agreement, ¶ 8.1)**

Under the Settlement Agreement, Class Counsel may request that the Court award them up to one third of the Settlement Fund as attorney fees plus their litigation costs. Class Counsel will file the request for attorneys' fees and litigation costs in advance of the Fairness Hearing.

## IV. The Court Should Grant Preliminary Approval Settlement of Class Action Litigation is Favored

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

> Preliminary approval of the proposed settlement at an informal hearing; Dissemination of mailed and/or published notice of the settlement to all affected class members; and A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.* With this Motion, Plaintiff requests that the Court take the first step in the process by granting preliminary approval of the proposed Settlement.

"Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, Case No. 05-md-1720, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R.

Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

### A. The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)

#### 1. The Class Representative and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)

Class Counsel and the Class Representative pursued this case vigorously on behalf of a potential class. As a result of Class Counsel's and the Class Representative's sustained effort, diligent settlement negotiations, substantial experience in BIPA litigation, the Parties reached a Settlement that makes meaningful monetary relief available to Class Members, with an appropriately tailored release of claims.

#### 2. The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B)

The Settlement was the result of arm's-length negotiation between counsel experienced in BIPA litigation.

#### 3. The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)

This Settlement here exceeds other approved BIPA class settlements. *See e.g.*, *Marshall v. Lifetime Fitness, Inc*., 2017-CH-14262 (Cir. Ct. Cook Cty.) ($270 per claimant with credit monitoring); *Taylor v. Sunrise Assisted Living,* 2017 CH 15152 (Cir. Ct. Cook Cty.) (BIPA settlement for between $40 and $115 per person); *Zhirovetskiy v. Zayo Group, LLC*, 2017 CH 09323 (Cir. Ct. Cook Cty.)(BIPA settlement of $400 per person with reversion); *Zepeda v. Kimpton Hotel & Restaurant Group, LLC*, 2018 CH 2140 (Cir. Ct. Cook Cty.) (BIPA settlement of $500 per person); *Sekura v. L.A. Tans Enterprises Inc.* 2015-CH-16694 (Cir. Ct. Cook Cty.)(BIPA settlement of $125 per person); *Sharrieff v. Raymond Mgmt Co*, 2018-CH-01496 (Cir. Ct. Cook Cty.) (BIPA settlement of $500 per person); *Dixon v. The Wash. & Jane Smith Home*, 1:17-cv-8033 (N.D. Ill. Aug. 20, 2019) (per member BIPA allocation of between $768 and

$1,085); *Jones v. CBC Restaurants Corp, dba Corner Bakery*, 19-cv-6736 (N.D. Ill 2020)(per member BIPA allocation of $800 per person). Likewise, this settlement exceeds other BIPA settlements involving the same Vocollect technology and that have been preliminarily approved. *See, Ricky Jones v. Whole Foods Market Group, Inc.*, 2022 CH 0060 ($899 per person); *Stegman v. Petsmart LLC*, 2022CV01179 ($899 per person).

The Court should further evaluate the adequacy of relief based on the sub-factors below, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), each of which the Settlement satisfies.

### a. Costs, risks, and delay of trial and appeal

If the litigation had continued, it would have been complex, expensive, and protracted. The disputed issues, however, facilitated this Settlement as the Parties considered the risks of continued litigation. In particularly, unlike most biometric technologies involving fingerprints, the use of a voiceprint involves a unique and different technology that would be the subject of conflicting expert opinions.

### b. Effectiveness of the proposed method of distributing relief to Class Members

The Settlement Administrator will send Notice via direct mail and email. Ex. 1, Settlement Agreement, ¶ 4.1(b). This notice program rivals those implemented in similar settlements. Class Members do not have to take any affirmative steps in order to receive a settlement payment. All Class Members will receive their pro rata amount of the Settlement Fund so long as they do not elect to exclude themselves from the settlement. The Settlement Administrator will distribute funds to Class Members via check to their last known mailing address or an electronic payment method of their choosing (e.g., wire, PayPal, Venmo, Zelle). ¶ 1.28.

### c. The terms of the proposed attorney fee award, including timing of payment

Settlement Class Counsel will seek an award of attorney fees of up to 33.33% of the

Settlement Fund plus litigation costs. Ex. 1, Settlement Agreement ¶ 8.1. The requested fee is equal to or below the fees awarded in similar BIPA class settlements.

### d. Any Agreement required to be identified under Rule 23(e)(3)

The Settlement Agreement is Exhibit 1 to this Motion. The Named Plaintiff also executed a comprehensive release as part of the class Settlement Agreement. There are no side agreements regarding the Settlement Class or attorney fees related to this Settlement.

### e. The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)

The Settlement treats Class Members equally by distributing awards from the Settlement Fund on a *pro rata* basis. Ex. 1, Settlement Agreement, ¶ 1.28. Settlement Class Members will be sent an electronic payment or check to their last known address for their pro rata share of the net amount unless they exclude themselves from the settlement.

## B. The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii)

### 1. Certification Will Be Appropriate Under Rule 23(a)

To obtain class certification, Plaintiff must demonstrate that his claims meet the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). As shown below, all of the elements of Rule 23(a) and (b)(3) are met here.

#### a. Numerosity

Courts consistently hold that if there are more than 40 class members, numerosity is satisfied. *See, e.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). The estimated class size here is 1,001, Ex. 1, Settlement Agreement, ¶ 10.2, which satisfies numerosity.

#### b. Commonality

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Those common issues must be susceptible to common answers. *Wal-Mart Stores,*

*Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The claims of Class Members can be resolved in a "single stroke" by answering the following common question: did Defendant collect, possess, or disclose the biometric data without following BIPA's notice and consent requirements? Answering this common question resolves liability for all Class Members. Thus, commonality will be met here.

### c. Typicality

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). The requirement is meant to ensure that the named representative's claims "have the same essential characteristics as the claims of the class at large." *Id.* (quotations and citation omitted)).

The claims of the Settlement Class Representative and Settlement Class Members arise from the same conduct: Defendant's alleged collection of biometric data through use of a voice technology system without obtaining informed written consent. Typicality will be met.

### d. Adequacy of the Class Representative

The adequacy of representation component has three elements: (1) the claims of the class representative cannot conflict with the claims of the other class members; (2) the class representative's interest in the litigation outcome must be sufficiently strong to ensure that he is a vigorous advocate for the class; and, (3) counsel for the class representative must be competent, experienced, and able to conduct the litigation with that necessary vigor. *Gammon v. G.C. Servs., L.P.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995). "The burden of demonstrating adequacy under this standard, nevertheless, is not a heavy one." *Nielsen v. Greenwood*, No. 91 C 6537, 1996 WL 563539, at *5 (N.D. Ill. Oct. 1, 1996).

### i. The Class Representative has an interest in the litigation and has no conflict with Class Members

The Class Representative alleges the same biometric claims as Class Members and has no interests antagonistic to them. Thus, the Class Representative has "a clear stake in a successful outcome – [] damages for [herself] and the class – that raises no specter of antagonistic interests." *Pierre v. Midland Credit Mgmt., Inc.,* 2017 WL 1427070, at *8-9 (N.D. Ill. Apr. 21, 2017). Plaintiff assisted in any way that he was asked, engaging in many interviews and reviews of information with his attorneys.

### ii. Class Counsel is experienced and qualified

Settlement Class Counsel will also fairly and adequately protect the interests of the Class Members. A court considers the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

Class Counsel are experienced class action attorneys and have been appointed class counsel in numerous actions in federal and state courts, including other BIPA class actions. Examples of recent BIPA class-wide settlements for Fish Potter Bolaños clients include: *Crumpton v. Octapharma Plasma*, 19-cv-8402 (N.D. Ill) ($9.9 million); *Devose v. Ron's Temporary Help Services, Inc.*, 2019L1022 (Cir. Ct. Will Cty)($5.375 million); *Labarre v. Ceridian HCM, Inc.*, 2019 CH 06489 (Cir. Ct. Cook Cty)($3.49 million); *Johnson v. Resthaven/Providence Life Servs.*, 2019-CH-1813 (Cir. Ct. Cook Cnty.) ($3 million); *Marsh v. CSL Plasma, Inc.* 19-cv-07606 ($9.9 million); *Philips v. Biolife* Plasma, 2020 CH 5758, (Cir. Ct. Cook Cnty.) ($5.98 million); *Davis v. Heartland Emp. Servs.,* No. 19-cv-00680, dkt. 130 (N.D. Ill.) ($5.4 million); *Figueroa v. Kronos Incorporated,* 2019-CV-01306 ($15.2 million); *Martinez v. Nando's Peri Peri*, 2019CV07012 (N.D. Ill. 2020)($1.78 million); *O'Sullivan, et. al. v. WAM Holdings, Inc.*, 2019-CH-11575 (Cir.

Ct. Cook Cnty.) ($5.85 million); *Barnes v. Aryzta LLC*, 2017CH11312(Cook Cty. Cir. Ct.)($2.9 million); *Burlinski v. Top Golf USA, No. 19*-cv-*06700*, dkt. 103 (N.D. Ill.) ($2.6 million); *Diller v. Ryder Integrated Logistics*, 2019-CH-3032 (Cir. Ct. Cook Cnty.) ($2.25 million); *Jones v. Rosebud Rests., Inc.*, 2019 CH 10620 (Cir. Ct. Cook Cnty.) ($2.1 million).

### 2. Certification Will Be Appropriate Under Rule 23(b)

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These prerequisites are satisfied.

#### a. Common questions predominate

Rule 23(b) predominance requirement looks to whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). "Thus, the Plaintiff bears the burden of demonstrating 'that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members.'" *Kernats, et al. v. Comcast Corp.,* Case Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219, at *7 (N.D. Ill. Oct. 20, 2010). Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the Defendant for which the law provides a remedy? The common question predominating in this case is whether Defendant collected, possessed, stored, and/or used Settlement Class Members' biometric data without following the requirements of BIPA. The answer to this question determines Defendant's liability under BIPA for all potential persons in the Settlement Class and therefore predominates over any individual questions.

#### b. A class action is a superior mechanism

The superiority inquiry requires a court to compare alternatives to class treatment and determine if any alternative is superior. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . .in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Here, the alternative to class resolution is a myriad of individual lawsuits for recoveries possibly less than $1,000, plus attorneys' fees and costs.

### c. Plaintiff's Notice Program and Class Notice Form Merit Approval

The proposed Notice complies with due process and the Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).Fed. R. Civ. P. 23(c)(2)(B).

Distribution of Notices directly to Settlement Class Members by U.S. mail and email is reasonable.

### III. Conclusion

Because the Settlement is fair and provides significant monetary relief to the Settlement Class, the Court should grant preliminary approval and enter the proposed Preliminary Approval Order, which will be submitted to the Court via its proposed order email address.

Respectfully submitted,

Dated: July 17, 2023                     /s/ David Fish
                                         One of Plaintiff's Attorneys

David Fish (dfish@fishlawfirm.com)
Mara Baltabols (mara@fishlawfirm.com)
Fish Potter Bolaños PC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*Attorneys for Plaintiff and Others Similarly Situated*

**CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on July 17, 2023, which will serve a copy on all counsel of record.

                                   /s/ Mara Baltabols
                                   One of Plaintiff's Attorneys