IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRYAN GOREE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>NEW ALBERTSON'S INC. dba JEWEL OSCO,<br><br>*Defendant*, | Case No.: 1:22-cv-01738 |

**PLAINTIFF'S MOTION IN SUPPORT OF**
**ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

**I.      INTRODUCTION**

On August 15, 2023, the Court granted preliminary approval of the Settlement and directed that Notice be sent to the Class. Per the Court-approved plan, on September 13, 2023, Notice of the Settlement was sent to Class members to see if any Class Members objected. The Notice included the requested fees, costs, and Service Award. In sum, Class Counsel secured a $1,076,075 Settlement for an estimated total Class Size of 992.[1] *See* Exhibit 1. This Motion is filed in advance of the Final Approval Hearing to be made accessible to the Class.

This is a non-reversionary settlement in which the entire common fund will be distributed via direct checks without a claims process. *See* Exhibit 1. Residual funds from uncashed checks will not revert to the Defendant but will be re-distributed to Settlement Class members who cashed their checks or successfully received their electronic payments, if feasible. *Id.* ¶(c). If re-distribution is not feasible (payout is less than $5.00 per person) or if residual funds remain after

---

[1] The Class size decreased slightly when the final class list was prepared, from 1,001 to 992. Based upon the terms of the Settlement, the Gross Fund remains the same at $1,076,075 despite the slight decrease. As a result, the gross pro rata per Class Member amount increases from $1,075 to $1,085.75. Ex. 1, ¶ 1.27.

re-distribution, such funds will be paid to the Greater Chicago Food Depository. Dkt. No. 52 ¶ 19. This worthy organization has recently stepped up to help feed migrants in our area. *See* https://www.chicagobusiness.com/nonprofits-philanthropy/greater-chicago-food-depository-vendors-work-feed-migrants

Plaintiff respectfully requests that the Court enter an Order granting his requested attorneys' fees ($358,691.67), litigation costs ($637.71), and authorizing a Service Award of $7,500 to Mr. Goree upon final approval of the Settlement. The Final Approval Hearing is scheduled for November 15, 2023.

The requested percentage fee award of 1/3 is well in line with common fund fee awards in BIPA cases in this District (*see* Exhibit 2, Chart 1 [listing 33.3% fee awards in BIPA cases in the Northern District]) and is in fact the percentage that is usually awarded in BIPA cases, (*see id.*, Chart 2 [listing 35% fee awards], yet even less than the percentage awarded in many cases, where warranted by the work expended and notable risk of loss. Chart 3 [listing 40% fee awards]). Class Counsel's request is reasonable and should be approved. Plaintiff's requested Service Award of $7,500 is similarly reasonable. Plaintiff's requested award reflects his exposure and participation throughout this case, including in the investigation of the action. It is comfortably in line with what has been awarded in several similar BIPA cases in this District. (*See* Exhibit 2, Chart 4 [listing incentive awards ranging from $5,000 to $10,000 in BIPA cases]).

## II. BACKGROUND

The case history and proposed Settlement terms are outlined in Plaintiff's Unopposed Motion for Preliminary Approval. Dkt. No. 47. On August 15, 2023, the Court preliminarily approved the Settlement. Dkt. No. 52. Plaintiff files this Motion for approval of requested fees and costs in advance of the October 27, 2023 objection/exclusion deadline to be available to Class

Members. Plaintiff is due to file a Motion for Final Approval by October 31, 2023. *Id.* The Final Approval Hearing is scheduled for November 15, 2023. *Id.* At that time, the Court will consider whether to grant final approval of the Settlement, including the fees and costs requested herein.

### III. CLASS COUNSEL SEEKS A REASONABLE AMOUNT IN ATTORNEYS' FEES, WITHIN THE MARKET RATE FOR SIMILAR SERVICES.

There are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method. *See Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994). The favored approach in the Seventh Circuit is to use the percentage of the fund method in common fund cases like this one. In class action settlements, courts may "award reasonable attorney's fees...that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In common fund settlements like this one, the attorneys' fee award is typically a share of the fund. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) (expressing a preference for the percentage-of-the-fund method and stating that "the lodestar approach certainly has its problems."); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *7 (S.D. Ill. 2018). *See also* Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical L. Stud. 811, 814 (2010) ("Most federal judges chose to award fees by using the highly discretionary percentage-of-the-settlement method.").

Class Counsel's retainer agreement with Plaintiff provides for fees of up to 40% of the total recovery but Class Counsel is seeking one-third *See* Exhibit 1, ¶ 8.1. The common fund doctrine is "based on the equitable notion that those who have benefited from litigation should share its costs." *Skelton v. General Motors*, 860 F.2d 250, 252 (7th Cir. 1988) (citation omitted). By awarding fees payable from the common fund created for the benefit of the entire class, the court spreads litigation costs proportionately among those who will benefit from the fund. *Boeing*

3

*Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "[A] plaintiff who has settled a case is considered a prevailing party if she has achieved some success on the merits and can point to a resolution that has changed the legal relationship between herself and defendant." *Connolly v. Nat'l School Bus Serv., Inc.*, 177 F.3d 593, 595 (7th Cir. 1999), *citing Farrar v. Hobby*, 506 U.S. 103, 109-11(1992), *Hewitt v. Helms*, 482 U.S. 755, 760-61 (1987). Plaintiff here has obtained a substantial value for the Class Members as all participating individuals will receive direct cash payments and any residual funds will re-distributed to Settlement Class members who cashed their checks or successfully received their electronic payments, if feasible and in the interests of the Settlement Class. If re-distribution is not feasible or if residual funds remain after re-distribution, such remaining residual funds will be distributed to the Greater Chicago Food Depository. Dkt. No. 52 ¶ 19.

There are several reasons that courts in the Seventh Circuit favor the percentage of the fund method. *See Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) ("[W]e have consistently directed district courts to do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.").

First, the percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir. 1986) ("[w]hen the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'"). In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Id.* at 325. It is for these reasons that the percentage-of-the-recovery approach makes the most sense for this case and has

been used in BIPA class action settlements. *See* BIPA Settlement Chart (all awarding comparable or higher fees based on a percentage of the settlement fund).[2]

Second, the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful churning of the file to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 789-90 (7th Cir. 2001). Where attorney fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation… a fee based on a percentage of recovery…tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

Third, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"); *Gaskill*, 942 F. Supp. at 386 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (fee requests "should not result in a second major litigation")). Courts in this district have noted the advantages of the percentage of the fund approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing

---

[2] Indeed, Settlement Class Counsel are unaware of any recent BIPA class action settlement where a court awarded fees based on the lodestar method instead of the percentage method.

advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making).

### A. One-Third Fee Award is Reasonable

When determining what constitutes a reasonable fee award, courts consider the fee awards made in similar cases, the risks that the particular case presented, the quality of the legal work provided, the anticipated work necessary to conclude the litigation, and the stakes of the case. *See Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005). Consideration of all factors affirms that an award of 35% of the fund as fees is reasonable in this matter.

#### i. One-Third or More is Customary.

A review of other BIPA class settlements demonstrates that a number of similar matters have awarded 1/3 or more of the common fund to class counsel as attorneys' fees. *See* Exhibit 2.

One-third is even with or below, contingent fee awards in the Northern District of Illinois. *See Dobbs v. DePuy Orthopaedics, Inc.,* 885 F.3d 455, 459 (7th Cir. 2018) ("The typical contingent fee is between 33 and 40 percent") *citing Gaskill v. Gordan,* 160 F.3d at 361, 362 (7th Cir. 1998); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingency fee ranges from 33 1/3% to 40% of the amount recovered)*; In re Diary Famers of Am., Inc.,* 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) (the usual range of contingent fees is between 33 and 50 percent); *McDaniel,* 2011 WL 13257336, at *4 ("[T]he real-word market range for contingent fee cases is 33% to 40%.") *see also* 5 William Rubenstein, NEWBERG ON CLASS ACTIONS § 15.83 (5th ed.) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund").

> ii. Risk of non-payment supports the requested fee award.

Class Counsel's requested fees and costs are more than fair and reasonable given the specific circumstances of this case, including the risk of non-payment. Class Counsel, with the assistance of Mr. Goree, thoroughly investigated and researched the viability of his claims, which affirmed Class Counsel's understanding of the legal intricacies and significant risk of loss, *i.e.* non-payment, by accepting this matter. Settlement Class Counsel took this case on a contingent fee basis and assumed the risk that they would receive *no* fee for their services. Exhibit 3, Baltabols Decl., ¶ 10; *see Sutton*, 504 F.3d at 693-94 (7th Cir. 2007) ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit.").

Additionally, a number of relative—and potentially dispositive—issues in BIPA jurisprudence were unsettled at the outset of this litigation but have now been decided by the Illinois Supreme Court. Had the Illinois Supreme Court decided that a one-year limitations applied to BIPA claims the vast majority of Class Members would suddenly be rendered ineligible to obtain any relief because their claims would become time-barred. *See Tims v. Black Horse Carriers, Inc.,* 2023 IL 127801. Similarly, if the Illinois Supreme Court held that BIPA claims only accrue upon the first scan, then the vast majority of Class Members' claims would have become time barred. *Cothron v. White Castle Sys., Inc.,* 2023 IL 128004.

Finally, in the BIPA realm, litigation is not the only risk. Many bills were introduced to amend or repeal BIPA.[3] Affected businesses and interested organizations have publicly opposed

---

[3] *See* H.B. 559, 102nd Gen. Assembly (Ill. 2021); H.B. 560, 102nd Gen. Assembly (Ill. 2021); H.B. 1764, 102nd Gen. Assembly (Ill. 2021); H.B. 3112, 102nd Gen. Assembly (Ill. 2021); H.B. 3304, 102nd Gen. Assembly (Ill. 2021); H.B. 3414, 102nd Gen. Assembly (Ill. 2021); S.B. 56, 102nd Gen. Assembly (Ill. 2021); S.B. 300, 102nd Gen. Assembly (Ill. 2021).

BIPA. The Illinois Supreme Court recognized the potential financial impact of BIPA may impact discretionary damages and recently asked for the legislature to weigh in. *Cothron*, 2023 IL 128004, ¶ 43. *Cothron* was also subject to a petition for rehearing, that was only very recently denied.

### iii. Class Counsel achieved an excellent result for the Class.

Class Counsel secured a non-reversionary settlement for the Class, which will give Class Members direct cash payments in line with or more than many other BIPA settlements. Class Members will receive a recovery in the gross amount of $1,084.75 per person. After all deductions are made, class members are estimated to receive a direct check in the net amount of approximately $700 based on a class size of 992 members, this number may be more or less.

As stated in the Preliminary Approval Motion, this negotiated amount took into account several factors. Overall, it is comparatively more than amounts negotiated in BIPA settlements with other terms beneficial to the Class (*i.e.* direct checks without a claims process, with no reversion to the Defendant). *Compare with Baldwin v. Metrostaff*, No. 2019-CH-04285 (Il. Cir. Ct. Cook Cnty. May 3, 2022) (Wilson, J.) (approving BIPA settlement of $292.98 net per person for 2,251 class members); *Zhirovetskiy v. Zayo Grp., LLC*, No. 2017-CH-09323 (Il. Cir. Ct. Cook Cnty. Apr. 8, 2019) (Flynn, J.) (approving reversionary fund for 2,200 class members, which capped payments at $400 gross per member); *Zepeda v. Kimpton Hotel & Rest.*, No. 2018-CH-02140 (Il. Cir. Ct. Cook Cnty. Dec. 5, 2018) (Atkins, J.) ($500 gross); *Taylor v. Sunrise Senior Living Mgmt., Inc.*, No. 2017-CH-15152 (Il. Cir. Ct. Cook Cnty. Feb. 14, 2019) ($115 or $40) (Loftus, J.); *Sharrieff v. Raymond Mgmt. Co.*, 2018-CH-01496 (Il. Cir. Ct. Cook Cnty. Aug. 1, 2019) (Cohen, J.) ($500 gross). Likewise, this settlement exceeds other BIPA settlements involving the same Vocollect technology and that have been preliminarily approved. *See Ricky*

*Jones v. Whole Foods Market Group, Inc.*, 2022 CH 0060 ($899 per person); *Stegman v. Petsmart LLC*, 2022CV01179 ($899 per person).

Critically, the fact that the Settlement Fund is non-reversionary maximizes the per-Class Member recovery without monetary benefit or reversion to the Defendant. *See, e.g., Zhirovetskiy*, 2017-CH-09323 (reverted up to $490,000 of funds to defendant); *Rosenbach v. Six Flags Ent. Corp.*, No. 2016-CH-00013 (Il. Cir. Ct. Lake Cty. Oct. 29, 2021) (approving reversionary fund, which capped class member payments at $200 or $60 depending on date of finger scan and reverted unclaimed funds to defendant); *Lark v. McDonald's USA, LLC*, No. 17-L-559 (Il. Cir. Ct. St. Clair Cnty. Feb. 28, 2022) (approving reversionary fund, which capped class member payments at $375 or $190 depending on date of finger scan and reverted millions of dollars to defendants); *Marshall v. Lifetime Fitness, Inc.*, No. 2017-CH-14262 (Il. Cir. Ct. Cook Cnty. July 30, 2019) (approving claims-made reversionary fund of $270 per class member, reverting the remainder to defendant). Here, none of the funds will revert to Defendant, which serves the deterrent function of the statute and maximizes the benefits to the Class. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶¶ 36, 37, 129 N.E.3d 1197, 1207. Any residual funds will re-distributed to Settlement Class members who cashed their checks or successfully received their electronic payments, if feasible and in the interests of the Settlement Class. If re-distribution is not feasible or if residual funds remain after re-distribution, such funds will be paid to the Albertsons Companies Foundation (http://national.albertsonscompaniesfoundation.org/) or such other cy pres selected by the Court at the Final Approval Hearing.

Class Counsel are experienced class action attorneys and have been appointed class counsel in numerous actions in federal and state courts, including a long list of BIPA class actions. Examples of recent BIPA class-wide settlements for Fish Potter Bolaños include: *Crumpton v.*

9

*Octapharma Plasma*, 19-cv-8402 (N.D. Ill) ($9.9 million); *Devose v. Ron's Temporary Help Services, Inc.*, 2019L1022 (Cir. Ct. Will Cty) ($5.375 million); *Labarre v. Ceridian HCM, Inc.*, 2019 CH 06489 (Cir. Ct. Cook Cty) ($3.49 million); *Johnson v. Resthaven/Providence Life Servs.*, 2019-CH-1813 (Cir. Ct. Cook Cnty.) ($3 million); *Marsh v. CSL Plasma, Inc.* 19-cv-07606 ($9.9 million); *Philips v. Biolife* Plasma, 2020 CH 5758, (Cir. Ct. Cook Cnty.) ($5.98 million); *Davis v. Heartland Emp. Servs.,* No. 19-cv-00680, dkt. 130 (N.D. Ill.) ($5.4 million); *Figueroa v. Kronos Incorporated,* 2019-CV-01306 ($15.2 million); *Martinez v. Nando's Peri Peri*, 2019CV07012 (N.D. Ill. 2020) ($1.78 million); *O'Sullivan, et. al. v. WAM Holdings, Inc.*, 2019-CH-11575 (Cir. Ct. Cook Cnty.) ($5.85 million); *Barnes v. Aryzta LLC*, 2017CH11312 (Cir. Court Cook Cty) ($2.9 million); *Burlinski v. Top Golf USA, No. 19-*cv-*06700*, dkt. 103 (N.D. Ill.) ($2.6 million); *Diller v. Ryder Integrated Logistics*, 2019-CH-3032 (Cir. Ct. Cook Cnty.) ($2.25 million); *Jones v. Rosebud Rests., Inc.*, 2019 CH 10620 (Cir. Ct. Cook Cnty.) ($2.1 million). Many of the Settlements in the attached Chart have been Class Counsel's. With their experience, Class Counsel negotiated the best result for the Class in this case at an amount comparable to other cases with similar risks.

### iv.  Payment of litigation costs is appropriate.

BIPA is a fee-shifting statute, providing for Plaintiff's litigation costs in addition to attorneys' fees. 740 ILCS 14/20(3). Also, Courts approving a class settlement may "award reasonable...nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "It is well established that counsel who create a common fund...are entitled to the reimbursement of litigation costs and expenses, which includes such things as...computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation." *Abbott v. Lockheed Martin Corp., No.* 06-CV-701-MJR-DGW, 2015 WL 4398475, at *4 (S.D.

10

Ill. July 17, 2015). Costs are $628.91, for filing, service, and other litigation costs and expenses. The Administrative Expenses of $14,418 are also comparatively reasonable, which will be addressed further in Plaintiff's Final Approval Motion.

## IV. PLAINTIFF'S SERVICE AWARD SHOULD BE APPROVED

Consistent with the Settlement Agreement and Class Notice, the Class Representative requests a Service Award of $7,500 from the Gross Fund. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award). *Davis v. Heartland Emp. Servs., LLC*, No. 1:19-cv-00680, dkt. 130 (N.D. Ill. Oct. 25, 2021) ($10,000 service award in BIPA case); (Exhibit 2, Chart 4).

The Court should approve Mr. Goree's requested Service Award in the amount of $7,500.00. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *see also GMAC Mortg. Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486, 497 (1st Dist. 1992) (service awards to named plaintiffs serve to the encourage the future filing of beneficial litigation). Mr. Goree's service greatly benefitted the Class. As stated in the preliminary approval motion, considering Mr. Goree's investment and exposure in this matter and the number of individuals who stand to benefit, a $7,500.00 Service Award is reasonable and fair. *See, e.g., Diaz,* No. 2017-CH-13198 (affirming $15,000 service award to BIPA plaintiff); *Ryan*, 274 Ill. App. 3d at 916 ($9,521 service award to each plaintiff); *see also* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303 (2006) (finding that "[t]he average award per class representative was $15,992").

Mr. Goree took on a substantial risk by bringing the case in his name. *See Beesley v. Int'l Paper*, No. 06 cv 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (suits against former employers also carry risks of professional and personal repercussions). The time, risk, and effort Mr. Goree put into the case should be recognized and encouraged through the Service Award.

**V.   CONCLUSION**

For all the foregoing reasons, the Court should award Class Counsel's requested attorneys' fees in the amount of $358,691.67, litigation costs in the amount of $637.71, Administrative Expenses in the amount of $14,418, and a Service Award of $7,500 to Bryan Goree.

Dated: October 12, 2023

/s/ Mara Baltabols
One of Plaintiff's Attorneys

David Fish
Mara Baltabols
Fish Potter Bolaños LLC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*dfish@fishlawfirm.com*
*mara@fishlawfirm.com*

*Attorneys for Plaintiff and Others Similarly Situated*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on October 12, 2023, which will serve a copy on all counsel of record.

/s/ Mara Baltabols
One of Plaintiff's Attorneys