IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRYAN GOREE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br>NEW ALBERTSONS L.P.,<br><br>Defendant. | Case No. 1:22-cv-01738 |

**PLAINTIFF'S COMBINED MOTION AND MEMORANDUM OF LAW
IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Bryan Goree ("Plaintiff"), individually and on behalf of the Settlement Class certified in the Preliminary Approval Order (Dkt. No. 53), by and through their undersigned counsel hereby moves for judgment and final approval of the class action Settlement and Release Agreement ("Settlement Agreement"), attached to this motion as Exhibit 1, reached with Defendant New Albertsons L.P. ("Albertsons" or "Defendant") (collectively the "Parties") through arms-length negotiations. As detailed below, notice was robust with no requests for exclusion and no objections received. Class members will each receive a substantial direct cash benefit in line with the amounts received by class members in other comparable settlements under the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA" or "the Act").

**I.  INTRODUCTION**

As more fully described herein, the Parties originally reached a class settlement for all individuals who used the Vocollect order picking technology at the Albertsons distribution center located at 1966 N 19th Avenue, Melrose Park, IL 60160 between March 1, 2018, and October 17, 2022, who are not members of a labor union, and who do not timely exclude themselves from the

1

Settlement, in the gross amount of $1,075.00 per person. *See* Exhibit 2, Preliminary Approval Order, ¶ 19 (b). Following preliminary approval, Defendant provided a class list to the Settlement Administrator that identified 992 Settlement Class Members. Notice went out according to this list of 992 Settlement Class Members. The final Settlement Fund has decreased pro rata for each person below the original estimate (from to 1,001 to 992). The final Settlement Fund is $1,066,400, equal to $1,075 per Settlement Class Member.[1]

The Settlement is a strong result as it is structured to maximize the number of Settlement Class Members who will receive a settlement payment: each Settlement Class Member will automatically be sent a payment. There is no requirement that they submit a claim form to receive a pro rata cash payment.

In accordance with the Court-approved plan described in the Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval") and as ordered by this Court, direct individual notice of the Settlement was mailed on September 12, 2023. *See* Exhibit 3, Barazesh Decl. at ¶ 8. At the conclusion of the deadline, there were zero requests for exclusion, and zero objections. *Id.*, at ¶¶ 11-12. Most of the members on the original Class List of 992 were successfully mailed Notice (88%). *Id.* ¶ 10.

Plaintiff respectfully submits that the complete absence of objections and exclusions speaks to the fairness, reasonableness, and adequacy of the Settlement, the effectiveness of the Notice, as well as the ease of the administration plan. The overwhelmingly positive reaction from Settlement Class Members also underscores the value the Settlement Class Members place on the terms of the Settlement agreed to by the Parties. This is a fair and reasonable result, particularly in

---

[1] After further review and discussion, the parties have agreed to the pro rata decrease according to the final class size, which is below the original estimate. This representation differs from Plaintiff's position taken in his Fee Petition filed on October 12, 2023. (Dkt. No. 53, n. 1).

view of the significant known and unknown risks and anticipated delays involved in litigating the merits of BIPA claims and inherent in pursuing these claims individually for a large percentage of Settlement Class Members. The overall Settlement and payment structure represent a substantial benefit to Settlement Class Members. Subject to approval by the Court approval, any residual funds will be re-distributed to Settlement Class members who cashed their checks or successfully received their electronic payments, if feasible. If re-distribution is not feasible or if residual funds remain after re-distribution, such funds will be paid to the Greater Chicago Food Depository. *See* Exhibit 1, ¶ 2.1(c), *as modified by* Exhibit 2, ¶ 19(c).

For the reasons set forth below, both the form and substance of this Settlement satisfy the standards for final approval, and it should therefore be approved.

## II. PROCEDURAL HISTORY

On January 24, 2022, Plaintiff filed a Class Action Complaint in the Circuit Court of Cook County, Illinois, alleging that Defendant violated BIPA by and through use of a Vocollect system. (Dkt. No. 1). Plaintiff alleged that Defendant violated BIPA by failing to do four things:

> 1. Properly inform Plaintiff and Class Members in writing that their biometric information and/or identifiers were being collected;
>
> 2. Properly inform Plaintiff and Class members in writing of the specific purpose and length of time for which their biometric identifiers (in the form of their voiceprints) or biometric information was being collected, stored, and used, as required by BIPA;
>
> 3. Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's biometric identifiers (in the form of their voiceprints) or biometric information, as required by BIPA; nor
>
> 4. Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their biometric identifiers (in the form of their voiceprints) or biometric information, as required by BIPA.

On April 5, 2022, Defendant removed the Litigation from state court to the United States District Court for the Northern District of Illinois. (Dkt. No. 7). On November 22, 2022, the

Defendant filed a Motion to Compel Arbitration, Dismiss Claims, or in the Alterative to Stay Proceedings (Dkt. No. 22), which the Court denied on March 8, 2023. (Dkt. No. 30). On June 7, 2023, the Parties informed the Court that they had reached a class-wide settlement. (Dkt. No. 42).



Unlike the typical biometric case in the employer context that involves the use of fingerprints for timekeeping, this case involved warehouse workers utilizing a headset like the one pictured. While the Defendant disagreed, Plaintiff alleged that the technology at issue utilized a "voiceprint", which is protected under the Biometric Information Privacy Act.

On August 15, 2023, the Court entered a Preliminary Approval Order for the Settlement, with some modifications to the Settlement Agreement, including the distribution of uncashed checks to *cy pres* recipient Grater Chicago Food Depository. *See* Exhibit 3, ¶ 19. The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002). The first two steps in this process have occurred. With this Motion,

Plaintiff respectfully requests that the Court take the third and final step in the process by granting final approval of the Settlement.

### III. SUMMARY OF PROPOSED SETTLEMENT TERMS

#### A. The Settlement Class

The Settlement Class includes 992 persons. For settlement purposes only, the Court preliminarily approved a Settlement Class consisting of the following:

> All individuals who used the Vocollect voice technology at the Released Parties' distribution center at 1966 N 19th Ave, Melrose Park, IL 60160 between March 1, 2018 and October 17, 2022. Excluded from the Settlement Class are (1) any District Judge or Magistrate Judge presiding over this action and members of their families, (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, (3) individuals that worked at a Released Parties' distribution center in Illinois who were members of a labor union; (4) persons who properly execute and file a timely request for exclusion from the Settlement Class, and (5) the legal representatives, successors or assigns of any such excluded persons.

*See* Exhibit 3, ¶ 19(b).

#### B. Administration and Notice

The administration and notice procedure were designed to provide Settlement Class Members with direct written notice of the Settlement. Consistent with draft notices submitted to the Court at the time of preliminary approval, the detailed Notice fully described the Settlement terms and provided information clearly informing Settlement Class Members of their options and how to opt out, object, and obtain additional information from the Administrator and/or directly from Class Counsel. *See* Exhibit 3. The Notice identified the amounts that could be paid out of the Gross Settlement Fund (service award, attorneys' fees, litigation costs, administration expenses) and estimated net check amount.

In compliance with the Settlement Agreement and consistent with the Order Granting Preliminary Approval ("Preliminary Approval Order"), Defendant provided the Settlement

Administrator with two mailing lists of the individuals identified as Settlement Class Members ("Class List") along with all known contact information. *Id.* ¶ 5. That Class List included the names and contact information for 992 Settlement Class Members. *Id.* The Administrator cross-referenced the names and addresses with the U.S. Postal Service's ("USPS") National Change of Address Database and, through this method, updated any outdated addresses. *Id.* ¶ 6.

On September 12, 2023, the Administrator mailed the Notice to the most current mailing address for each of the 992 Settlement Class Members *Id.* ¶ 8. After the initial mailing, USPS returned 187 Notices. *Id.* ¶ 10. Through additional searches, the Administrator was able to locate 68 updated addresses. *Id.*

After the conclusion of the deadline, the Administrator received no requests for exclusion and no objections to the Settlement. *Id.* ¶¶ 11, 12. In total, 873 individuals of the original 992, who constitute 88% of this Class list, were successfully mailed notice. *Id.* ¶ 10.

### C. Class Release

Settlement Class Members who do not exclude themselves, and other Releasing Parties defined in the Settlement Agreement, will release the Released Parties, as defined in the Settlement Agreement, from the Released Claims, which are defined in the Settlement Agreement to include: "any and all past and present claims or causes of action whatsoever, of every kind, nature, or description, whether in law or in equity, known or unknown, that were or could have been asserted in the Action arising from or relating to Defendant's alleged collection, possession, capture, purchase, receipt through trade, obtaining, sale, profit from, disclosure, redisclosure, dissemination, storage, transmittal, and/or protection from disclosure of alleged biometric information or biometric identifiers through the use of Vocollect technology at Defendant's Illinois facilities, including any violation of the Biometric Information Privacy Act, 740 ILCS 14/1, et seq.

("BIPA"), or any other federal, state or common law relating to the collection, capture, receipt or disclosure of voiceprints or other biometric identifiers or biometric information by Defendant at issue in the Action." Exhibit 1, ¶ 20.

### D. Monetary Relief for Participating Settlement Class Members

While denying all liability and wrongdoing, Defendant has agreed to establish a Gross Settlement Fund of $1,066,400, equal to $1,075 per Settlement Class Member to resolve the Released Claims on a class action basis. The Gross Settlement Fund is the maximum amount that Defendant shall be obligated to pay under the Settlement. Only those Settlement Class Members who do not timely exclude themselves shall be bound by the Settlement Agreement. Zero exclusions were received. The "Net Settlement Fund" is the Gross Settlement Fund minus the following deductions, once approved by the Court: Class Counsel's attorneys' fees and litigation costs; the Settlement Administrator's Administrative Expenses; and the Class Representative's Service Award. The remainder of the Net Settlement Fund shall be distributed to Settlement Class Members on a pro rata basis. *Id.* ¶ 2.1.

Settlement Class Members will have 180 days to cash their settlement payments. Any residual funds will be re-distributed to Settlement Class members who cashed their checks or successfully received their electronic payments, if feasible. If re-distribution is not feasible or if residual funds remain after re-distribution, such funds will be paid to the Greater Chicago Food Depository. *See* Exhibit 1, ¶ 2.1(c), *as modified by* Exhibit 2, ¶ 19(c).

This Settlement also warrants approval as it compares favorably to other BIPA settlements involving similar Vocollect technology that have also been approved. *See Ricky Jones v. Whole Foods Market Group, Inc.*, 2022 CH 0060 (Cir. Ct. Cook Cty.) (Judge Mullen); *Stegman v. Petsmart LLC*, 2022CV01179 (N.D. Ill.) (Judge Durkin).

7

### E. Class Representative Service Award

As described in the Fee Motion, in exchange for his service on behalf of the Settlement Class Members, the Settlement Agreement provides for a Service Award of $7,500 to be paid to Bryan Goree for his work in prosecuting this lawsuit on behalf of the Settlement Class, providing detailed information to support the allegations, and recovering money for the Settlement Class. Mr. Goree provided information as requested by his counsel before and throughout the litigation, was constantly available, and assisted Plaintiff's counsel whenever called upon. Mr. Goree took substantial direct and indirect risk by bringing the action in his name and agreeing to participate fully in discovery and trial. The time, risk, and effort Mr. Goree put into the case should be recognized and encouraged through the Service Award.

### F. Attorneys' Fees and Costs

Consistent with the Motion for Preliminary Approval, Class Counsel requests 1/3 of the Settlement Fund. The amount requested for final approval is $355,466.67 as attorneys' fees and $637.71 for reimbursement of out-of-pocket litigation expenses. See Exhibit 4, Baltabols Dec. Courts in this District have regularly awarded 33-40% of the gross fund as attorneys' fees in common fund class action settlements. Class Counsel also requests $14,418 in Settlement Administration costs. Exhibit 3, ¶ 13.

One-third is appropriate for contingent fee awards in the Northern District of Illinois. *See Dobbs v. DePuy Orthopaedics, Inc.,* 885 F.3d 455, 459 (7th Cir. 2018) ("The typical contingent fee is between 33 and 40 percent") *citing Gaskill v. Gordan,* 160 F.3d at 361, 362 (7th Cir. 1998); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingency fee ranges from 33 1/3% to 40% of the amount recovered)*; In re Diary Famers of Am., Inc.,* 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) (the usual

range of contingent fees is between 33 and 50 percent); *McDaniel,* 2011 WL 13257336, at *4 ("[T]he real-word market range for contingent fee cases is 33% to 40%.") *see also* 5 William Rubenstein, NEWBERG ON CLASS ACTIONS § 15.83 (5th ed.) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund").

A review of other BIPA class settlements demonstrates that a number of similar matters have awarded one-third of the common fund to class counsel as attorneys' fees. *See* Exhibit 4. The requested percentage fee award of one-third (33.33%) is well in line with common fund fee awards in BIPA cases in this District (*see* Exhibit 5, Chart 1 [listing 33.3% fee awards in BIPA cases in the Northern District]) and is in fact below the percentage that is often awarded in BIPA cases (*see id.*, Chart 2 [listing 35% fee awards], yet even less than the percentage awarded in many cases, where warranted by the work expended and notable risk of loss. Chart 3 [listing 40% fee awards]). Class Counsel's request is reasonable and should be approved. Plaintiff's requested Service Award of $7,500 is similarly reasonable. Plaintiff's requested award reflects his exposure and participation throughout this case, including in the investigation of the action. It is similar to amounts awarded in several comparable BIPA cases in this District. (*See id.*, Chart 4 [listing incentive awards ranging from $5,000 to $10,000 in BIPA cases]).

### IV.     FINAL APPROVAL IS WARRANTED

Federal courts strongly favor and encourage settlements, particularly where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that the "claims, issues, or defenses of a certified class...may be settled...only with the court's approval...after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R.

Civ. P. 23(e); *AIG v. ACE INA Holdings*, No. 07 CV 2898, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28 2012); *Uhl v. Thoroughbred Tech. & Tel., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g., Snyder v. Ocwen Loan Servicing*, No. 14 CV 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

In deciding whether a settlement is fair, reasonable, and adequate, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the Defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed. *Wong v. Accretive Health*, 773 F.3d 859, 863 (7th Cir. 2014) (the "*Wong* factors"); *accord Synfuel v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Courts in the Seventh Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g., In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019). Applying these factors, the Court should find that the Settlement is fair, reasonable, adequate, and should be approved.

### A. Rule 23(e)(2) Factors Favor Final Approval.

i. <u>The Class Representative and Class Counsel Have Adequately Represented the Class</u>

To establish that class counsel and the class representative have adequately represented the class, courts consider their performance as it relates to the "conduct of the litigation and of the

10

negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is satisfied where the class representative diligently participated and class counsel vigorously litigated. *Snyder*, 2018 WL 4659274, at *4; *see also Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both through motion practice on the legal merits and through discovery of facts and potential damages"). Key to this factor is whether class counsel and the class representative had sufficient information to negotiate a class-wide settlement. *See Snyder*, 2018 WL 4659274 at *4. This element corresponds with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

Plaintiff cooperated throughout the entirety of this matter, including fielding questions, and regularly conferring with counsel, and waging the risk of being a Class Representative. Further, the Parties engaged in litigation that allowed them to comprehensively review and weigh the risks and probabilities of success and calculate a range of potential damages prior to engaging in settlement discussions. Accordingly, the Class Representative and Class Counsel have adequately represented the proposed Settlement Class and Rule 23(e)(2)(A) is satisfied.

      ii.      The Settlement was Reached Through Arm's-Length, Non-collusive Negotiations

The settlement terms were negotiated at arms-length between attorneys experienced in the litigation, and settlement of class actions. Counsel for the Parties understand the unique and unsettled legal and factual issues in the case. BIPA litigation is an expanding and rapidly evolving area of law, and there existed multiple questions of law that remained unsettled by the courts. Through their experience, the attorneys were well positioned to evaluate the strengths and weaknesses, as well as the appropriate basis upon which to settle the case. Accordingly, the

11

Settlement was properly obtained through arm's-length negotiations and was non-collusive.

### iii. The Settlement Secures Positive Relief for Class Members

The Settlement provides more than adequate relief for Settlement Class Members. After all deductions are made Settlement Class Members who are receiving cash payments are estimated to receive a check in the net amount of $690. This is a substantial per-person recovery that leaves little doubt that the benefit to the Settlement Class is quite positive. The per-person recovery substantially exceeds the amounts awarded to individuals in many previously approved BIPA class settlements. *Compare with Baldwin v. Metrostaff*, No. 2019-CH-04285 (Il. Cir. Ct. Cook Cnty. May 3, 2022) (Wilson, J.) (approving BIPA settlement of $292.98 net per person for 2,251 class members); *Zhirovetskiy v. Zayo Grp., LLC*, No. 2017-CH-09323 (Il. Cir. Ct. Cook Cnty. Apr. 8, 2019) (Flynn, J.) (approving reversionary fund for 2,200 class members, which capped payments at $400 gross per member); *Zepeda v. Kimpton Hotel & Rest.*, No. 2018-CH-02140 (Il. Cir. Ct. Cook Cnty. Dec. 5, 2018) (Atkins, J.) ($500 gross); *Taylor v. Sunrise Senior Living Mgmt., Inc.*, No. 2017-CH-15152 (Il. Cir. Ct. Cook Cnty. Feb. 14, 2019) ($115 or $40) (Loftus, J.); *Sharrieff v. Raymond Mgmt. Co.*, 2018-CH-01496 (Il. Cir. Ct. Cook Cnty. Aug. 1, 2019) (Cohen, J.) ($500 gross).

### A. The Proposed Settlement is Fair, Reasonable, and Adequate.

#### i. Further Litigation Would be Highly Complex, Protracted, and Expensive to Address the Merits of Plaintiff's Claims and Class Certification

If the litigation had continued, it would have been complex, expensive, and protracted. Appeals that were pending at the time of negotiations were also considered. A few relative – and potentially dispositive – issues in BIPA jurisprudence were unsettled at the outset of this litigation but have now been decided by the Illinois Supreme Court. Had the Illinois Supreme Court decided that a one-year limitations period applies to BIPA claims the vast majority of Settlement Class

Members would suddenly be rendered ineligible to obtain any relief because their claims would become time-barred. *See Tims v. Black Horse Carriers, Inc.,* 2023 IL 127801. Similarly, if the Illinois Supreme Court held that BIPA claims only accrue upon the first scan, many Settlement Class Members' claims would have become time barred. *Cothron v. White Castle Sys., Inc.,* 2023 IL 128004.

Finally, in the BIPA realm, litigation is not the only risk. Many bills were introduced to amend or repeal BIPA.[2] Affected businesses and interested organizations have publicly opposed BIPA. The Illinois Supreme Court recognized the potential financial impact of BIPA may impact discretionary damages and recently asked for the legislature to weigh in. *Cothron*, 2023 IL 128004, ¶ 43 (Feb. 17, 2023). *Cothron* was also subject to a petition for rehearing, that was only recently denied by the Illinois Supreme Court. In that opinion, the *Cothron* Court again asked the legislature for guidance and to "make clear its intent regarding the assessment of damages under the Act." *Id.* (rehearing denied July 18, 2023). The legislature has yet to respond.

    ii.    Administration and Notice Procedures were Robust, and the Settlement has been Well Received by the Class Members

As described herein, class administration and notification procedures were robust and employed the best mechanisms to thoroughly identify and notify Class Members at the earliest possible juncture, providing them with as much time as possible under the circumstances to opt out or object to the settlement. The Settlement Administrator then performed multiple searches to update addresses. Of the original 992 Settlement Class Members, 873, or 88%, received notice. Exhibit 3, ¶ 10. None of the Class Members opted out or objected to the settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (granting final approval of class settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'").

13

The lack of objectors denotes support for the settlement and strongly favors a finding that it is "fair and reasonable." *Am. Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002); *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 6406084 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement"); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) ("[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate"). The fact that none of Class Members have neither opted-out nor filed objections to the proposed Settlement is "strong circumstantial evidence favoring settlement." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2000).

All Class Members who did not exclude themselves or elect to be compensated receive a check without having to submit claims. Since the Class Members did not have to submit claims to participate, this means 873 out of 992 Class Members (i.e., 88%) are expected to receive direct cash payments. Claims-made class settlements typically result in less than 15% of all eligible members receiving payment. *See McLaughlin on Class Actions § 6:24* (8th ed.) ("claims-made settlements typically have a participation rate in the 10–15 percent range."); *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 119-20 (2007) (noting that it is not unusual to have participation rates of 10 to 15% and examining examples of rates lower than 5%); *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N, 11 (Sept. 2019) ("the median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%.").

        iii.    The Opinion of Competent Counsel Weighs in Favor of Approval

Here, Class Counsel affirms that this settlement provides a fair value and a significant benefit to the members of the Class, which meets or exceeds the typical BIPA class settlement. Class Counsel strongly endorses this Settlement. These facts weigh heavily in favor of final approval. *See McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d. 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations. . . suggest that the settlement is fair and merits final approval").

## V. CONCLUSION

Plaintiff respectfully requests that the Court enter an Order granting final approval of the Settlement. A copy of the proposed final order is attached as Exhibit 6.

Respectfully submitted,

Dated: October 31, 2023        /s/Mara Baltabols

        One of Plaintiff's Attorneys
        Fish Potter Bolaños PC
        111 East Wacker Drive, Suite 2300
        Chicago, Illinois 60601
        Tel. (312) 861-1800
        docketing@fishlawfirm.com
        *Attorneys for Plaintiff*
        *and Others Similarly Situated*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on October 31, 2023, which will serve a copy on all counsel of record.

        /s/Mara Baltabols